ROBINSON v. WESTERN ASSUR. CO.

(District Court, N. D. New York. March 16, 1914.)

1. INSURANCE (§ 349*)—FIRE POLICY—CONDITIONS.

A provision in a fire policy that, if the premiums were not paid within 60 days from the date of the attachment of the insurance, the policy should be void during the time the premiums were past due and unpaid should be construed to mean voidable at the election of the insurer, and not void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 891, 895–902, 913; Dec. Dig. § 349.*]

2. INSURANCE (§ 390*)—FIRE POLICY—PREMIUM—DEFAULT—WAIVER.

A fire policy was issued to plaintiff, covering a launch, May 9, 1912, providing that it should be void if the premium was not paid within 60 days from date of the attaching of the risk and during the time the premium remained due and unpaid. The policy attached May 31st following. On August 12th payment was demanded, and on September 23d the insurer's general agent wrote that, unless remittance was received on or before October 1st, notice of cancellation would be served. No notice of cancellation was served, however, until, on October 15th, the agent wrote to plaintiff notifying him of cancellation, but during the night of the 16th, and before notice of cancellation was received by plaintiff on the 19th, the boat was lost. Held, that such facts were sufficient to show a waiver of the insurer's right to cancel the policy for nonpayment of premium when due.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1037, 1038; Dec. Dig. § 390.*]

At Law. Action by Ernest J. Robinson against the Western Assurance Company, on a policy of fire insurance. Verdict having been returned for plaintiff, defendant moves for a new trial. Denied.

─────────────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Weeds, Conway & Cotter, of Plattsburgh, N. Y. (Frank E. Smith, of New York City, of counsel), for plaintiff.

Carpenter & Park, of New York City (Donald F. McLennan, of Syracuse, N. Y., and Henry E. Mattison, of New York City, of counsel), for defendant.

RAY, District Judge. About May 9, 1912, the defendant, a foreign corporation, through its general manager in the United States, one E. S. Kelley, issued to the plaintiff, Ernest J. Robinson, a policy of insurance on the hull, tackle, etc., of his gasoline launch "Dan." It was issued in consideration of a premium of $131.25, and contained the following:

"It is agreed that should the premiums on this policy be not paid within sixty days from date of attaching, the policy shall be null and void during the time the premium is past due and unpaid."

The plaintiff obtained this policy through one Carl H. Oliver, who, in this transaction, was an insurance broker only, and who obtained it from Kelley, the general agent of the defendant. Oliver was not Kelley's agent and did not represent him, nor was he the agent of the defendant. The policy was sent to Oliver by Kelley, and by Oliver delivered to the plaintiff about May 6, 1912, and was a valid delivery. Robinson did not pay the premium to the defendant, or to Kelley, or to Oliver at that time, but later gave his note to Oliver. Kelley knew the premium was not paid, and by letter urged payment on at least three different occasions. October 1, 1912, Oliver wrote Kelley that Robinson would pay the 10th of the month. That, of course, informed Kelley that the premium was not yet paid to Oliver. October 15, 1912, Kelley wrote Oliver that, as the premium was not paid, he was sending notice of cancellation of the policy, but would be glad to reinstate the same on payment of the premium. This letter of notice of cancellation to Oliver was received by him at about 2 o'clock p. m. on October 17, 1912, but Kelley's letter of cancellation sent to Robinson was not received until October 19, 1912. During the night of October 16, 1912, the boat Dan was destroyed by fire and sank. Whether she was a total loss or not was a question of fact submitted to the jury. On the 18th of October the defendant company was notified by telegram of the loss. Kelley was also notified, but denied liability. In August, 1912, Kelley had reported to the defendant company the issuing and delivery of this policy to Robinson, and reported it as an outstanding policy, and also charged himself with the amount of the premium in his account with the defendant company and actually remitted it. Later, and in December, after the fire, on learning that Kelley had not received the premium from Oliver or Robinson, the premium was returned.

The court charged the jury that the premium was not paid; that Oliver was not the agent of Kelley or of the defendant; that the defendant company had the right, through its agent Kelley, to waive the provision that the policy should become null and void after 60 days from the date of attaching in case the premium was not paid, and treat

the policy as valid, outstanding, and binding, notwithstanding such nonpayment. The court charged:

"If the insurance company did so waive the provisions and did so recognize and treat the policy as valid and subsisting and outstanding, and if the plaintiff only received the letter canceling the policy after the fire, then you will come to the question of damages."

The court said and finally charged:

"Now, gentlemen, I charged you and I charge you again; of course during the 60 days that policy was valid whether the premium was paid or not. After the 60 days had run, from the time it attached, and it was after that that the fire occurred, whether this was a valid and binding policy and contract of insurance in force would depend on whether or not the defendant company, through its agent Kelley, who I told you had the power in that regard, waived the nonpayment of the premium by having reported it, paying it over, and by writing on two or three occasions, I think three, at different dates, asking payment of the entire premium, treating it as due, and saying nothing at all about this condition, and not giving any notice that they elected to treat the policy as void, or would if the premium was not paid, not calling attention to it, under all these facts and those that I called attention to as I read it here (I will not repeat it), by those acts and letters waived that condition which defendant had a right to do. The question is: Did it? That is for you to say. If the defendant, through Kelley, did so waive that provision and treat the policy as valid and in force, notwithstanding that nonpayment, and waived it, the plaintiff is entitled to recover. If the defendant, through Kelley, did not waive it, that ends this case, and the plaintiff cannot recover, and your verdict should be for the defendant."

The court also charged that, if the notice of cancellation sent Robinson was received prior to the fire, he could not recover.

[1] I think it is fairly well settled that such a condition in a policy meant not "absolutely void" but "voidable at the election of the insurer." Grigsby v. Russell, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Knickerbocker Life Ins. Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Oakes v. Manufacturers' Fire & Marine Ins. Co., 135 Mass. 248.

In Grigsby v. Russell, supra, which reverses 168 Fed. 577, 94 C. C. A. 61, the Supreme Court said:

"But a condition in a policy that it shall be void if premiums are not paid when due means only that it shall be voidable at the option of the company."

[2] So the right which this defendant company undoubtedly had to avoid the policy for nonpayment of the premium could be waived. Waiver has nothing to do with this case, if the clause referred to operates to make the policy ipso facto null and void in case the premium was not paid within the 60 days from date of attaching. A policy which had become null and void could not be renewed by waiver. The very language of the condition quoted plainly indicates that the policy is not to become void in case the premium is not paid. It is to be null and void; that is, inoperative during the time the premium is past due and unpaid. Further credit can be given; the policy can remain in force by consent, by waiving immediate payment (that is, extending further credit). And here Kelley treated the policy as a valid policy in force by writing at least three times for the payment of the premium, by reporting it as valid and outstanding, and by himself ad-

vancing the premium to the company, and by finally giving notice that it was canceled for nonpayment of the premium, thus ending the credit. The policy attached May 31, 1912. July 31, 1912, the premium was due. August 12, 1912, Kelley wrote for the premium. September 23, 1912, Kelley again wrote for the premium, and said:

"This premium is long past due, and unless remittance is received on or before October 1st, we will be under the necessity of serving cancellation notice on the assured for nonpayment."

October 1st Oliver telegraphed Kelley:

"Will pay the 10th of month."

The matter ran until October 15th, when Kelley wrote Robinson:

"You will please take notice that the premium of $135.25 on policy No. 1375, of the Western Assurance Company, dated May 31, 1912, has not been paid. Owing to the failure on your part to pay said premium, I herewith notify you that the policy is canceled according to its conditions, and the company will not be liable for any loss under said policy.                E. S. Kelley,
        "Agent Western Assurance Company."

Kelley's letter to Oliver of the same date reads:

"We beg to advise you that inasmuch as the premium on the Western Assurance policy #1375, covering motor boat of Mr. Ernest J. Robinson has not been paid, we are to-day serving notice of cancellation on the assured for nonpayment of premium. We will of course be very glad to reinstate the policy upon receipt of the premium.
        "Yours very truly."

It is impossible to conclude otherwise than that this policy was regarded as valid and in force until the notice of cancellation was given. If it was void for nonpayment of the premium, why give notice that it would be declared void, etc., and then why say, "Notify you that the policy is canceled," etc.? I think Washoe Tool Mfg. Co. v. Hibernia Ins. Co., 7 Hun, 74, affirmed 66 N. Y. 613, Robinson v. Pacific Ins. Co., 18 Hun, 395, and Titus v. Glens Falls Ins. Co., 81 N. Y. 410, are substantial authority to the effect that nonpayment of the premium did not make this policy void, and that it was competent for the company to waive the nonpayment and continue it in force.

The evidence is clearly sufficient to sustain the finding of the jury that this company waived the nonpayment of the premium and treated and regarded the policy as valid, in force, and outstanding down to the time the notice was given. The policy was delivered without payment of the premium; it was left outstanding, and repeated and unconditional demands of payment of the premium were made; the general agent and the defendant company, the insurer, dealt with each other on the theory and basis that the policy was valid and outstanding; and the notice of cancellation sent October 15th, which assumed a valid outstanding policy and that notice of cancellation was necessary, demonstrates the understanding of the company. This demand was for the entire premium, that earned and that unearned, and, as the entire premium was the consideration for the continuance of the policy for the entire term, it seems to me that the demand for the payment of such premium was a plain recognition, not only that the policy was in

force, but that it would be kept in force at least until notice to the contrary. Kelley, the general agent, had power to waive the payment of the premium. Wood v. P. I. Ins. Co., 32 N. Y. 619; Boehm v. W. Ins. Co., 35 N. Y. 131, 90 Am. Dec. 787; M. & M. Ins. Co. v. Armstrong, 145 Ill. 469, 34 N. E. 553.

I do not think it was error to admit the evidence as to the transactions between the·defendant company and its general agent in the United States, Kelley. It was not allowed to have any improper influence on the jury. I think this was a proper case for determination ·by a jury; that questions of fact were presented; that there was evidence to sustain the findings made; and that a new trial should be denied.

So ordered.