GEORGE W. BLOOD ET UX. *v.* JOSEPH GIBBONS ET UX.

[No. 131, September Term, 1979.]

*Decided August 18, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael I. Gordon,* with whom were *Gordon & Heneson, P.A.* on the brief, for appellants.

*Kathryn E. Koshel,* with whom were *James A. Pine* and *Charlotte W. Pine* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

In this case we are presented with the narrow question of the proper construction of a forfeiture clause in a real estate contract for the sale of a private residence. The clause at issue becomes operative upon a breach of the contract by the buyer. At least two remedies are available under this provision — the right to forfeit the earnest money deposit, and the right to bring suit for compensatory damages for breach of contract. We must decide whether the seller is contractually restricted to elect only one of such remedies, or whether the seller may avail himself of both remedies when his damages exceed the amount of the forfeited deposit.

On May 29, 1977, Joseph and Lois Gibbons (sellers) entered into a contract to convey their Baltimore County residence to George and JoAnn Blood (buyers). The parties signed a form contract which was provided by the buyers' real estate agent. The contract price was set at $80,000, and settlement was scheduled for July 15, 1977. In accordance with the contract, the buyers made a $1,500 deposit. A forfeiture clause was contained in the contract; it provided:

"FORFEITURE OF DEPOSIT . . . If the Purchaser shall fail to make full settlement the deposit herein provided for may be forfeited at the option of the Seller, in which event the Purchaser shall be

"relieved from further liability hereunder unless the Seller notifies the Purchaser and the Broker in writing within 30 days from the date provided for settlement herein of his election to avail himself of any legal or equitable rights, other than the said forfeiture, which he may have under this contract. In the event of the forfeiture of the deposit or in the event of an award of damages by a court or a compromise agreement between Seller and Purchaser, the Seller shall allow the Broker one-half thereof as compensation for services, said amount not to exceed the amount of the full brokerage fee. . . ."

The buyers did not proceed to settlement, and it is undisputed that they thereby breached the contract.

On July 25, 1977, the sellers notified the buyers and their real estate agent in writing of their intent to "avail themselves of all their legal and/or equitable remedies including specific performance and damages." The sellers additionally stated that they would not treat a forfeiture of the deposit as relieving the buyers from further liability. The buyers, on August 4, 1977, notified the sellers that their breach of the contract was attributable to the hospitalization of Mrs. Blood. On August 15, 1977, the real estate agent and the buyers signed a "Release" by the terms of which the buyers would be relieved of any liability on the contract upon the forfeiture of the deposit. The sellers refused to sign this document. The Gibbons ultimately sold the property for $71,000 on September 30, 1977; this represented a $9,000 loss to the sellers. On October 10, 1977, the sellers requested that the escrowed deposit money be forfeited as a portion of their damages. The deposit was thereafter disbursed, one-half to the sellers and one-half to the realtors.

On December 2, 1977, the sellers brought suit in the Circuit Court for Baltimore County, claiming damages for breach of the contract. On the basis of depositions taken of real estate personnel, the buyers filed a motion for summary judgment, contending that once the deposit was forfeited further liability under the contract was extinguished. The

sellers filed an answer to the motion and a cross-motion for partial summary judgment. The court (Land, J.) denied the buyers' motion, and granted the sellers' motion for partial summary judgment on the issue of liability. The court found that the contract clause permitted the seller to declare a forfeiture of the deposit and to also bring suit for additional damages beyond the amount of the deposit. The case proceeded to trial for determination of the amount of damages, and on February 8, 1979, the court entered judgment for the sellers, finding the buyers liable for $9,478.19 in damages in addition to the $1,500 deposit.[1] The buyers appealed to the Court of Special Appeals, which affirmed the judgment in an unreported per curiam decision. We thereupon granted a writ of certiorari.

As previously stated, at issue is the proper interpretation of the "Forfeiture of Deposit" provision in the contract of sale. The sellers contend, in essence, that this provision permits a seller to cause a forfeiture of the deposit and then, upon giving timely notice, to sue for damages in excess of the deposit. The sellers assert that the phrase — "unless the Seller notifies the Purchaser and the Broker ... of his election to avail himself of any legal or equitable rights, other than the said forfeiture, which he may have under this contract" — operates to qualify the option of forfeiture. In other words, the sellers assert that the forfeiture of deposit provision in the contract as a whole permits the election of any legal or equitable rights *in addition to* the forfeiture of the deposit. According to the sellers, by giving timely notice of their intent to exercise their right to receive compensatory damages beyond the amount of the deposit, they are availing themselves of a right *other than* (and in addition to) their right to the forfeited deposit.

The buyers argue that the contract provision at issue grants to the seller, in the event of a breach by the buyer, one of two mutually exclusive options — the seller must either

---

1. The court calculated that the house was sold for a loss of $9,000, and that the breach required the seller to pay: additional real property tax of $200.67, $48.13 in insurance, $1,458.33 in interest on the bridge mortgage, and $276.06 in interest on the total damages from July of 1977 to January of 1979. The $1,500 deposit was deducted from the total damages figure.

(1) elect to declare a forfeiture of the deposit and thereby waive his right to further remedies, or (2) pursue legal and/or equitable remedies without forfeiting the deposit. In other words, the buyers contend that in order to assess further liability beyond the amount of the deposit, the seller must exercise a right other than "the said forfeiture." Forfeiture of the deposit is asserted to be not within the meaning of exercising a right *other than* (and distinct from) the right to claim a forfeiture.

In support of their position, the buyers rely on *Casey v. Jones,* 275 Md. 203, 339 A.2d 33 (1975), a case involving a contract provision identical in every material respect to that provision presently before us. In *Casey,* the property owners retained a real estate broker to sell their property. The broker produced a prospective purchaser and a contract of sale was executed. After the buyer breached his obligation to make a $5,000 deposit towards the ultimate purchase price of $90,000, the broker brought suit against the buyer to secure his commission out of the deposit. The broker's entitlement to compensation was controlled by the contract of sale which provided:

> " 'If the Purchaser shall fail to make full settlement, the deposit herein provided for may be forfeited at the option of the Seller, in which event the Purchaser shall be relieved from further liability hereunder unless the Seller notified the Purchaser and the Agent(s) in writing within 30 days from the date scheduled for settlement of his election to avail himself of any legal or equitable rights, other than the said forfeiture, which he may have under this contract. In the event of the forfeiture of the deposit, the Seller shall allow the Agent(s) one-half thereof as a compensation for his services, said amount not to exceed the amount of the full brokerage fee.' " 275 Md. at 205.

Judge Digges, writing for the Court in *Casey,* stated that under this contract provision

> "the sellers had available to them, at the time of the

buyer's default, an election among remedies. They could exercise their 'option' to 'forfeit' the deposit being held by the broker, in which event the contract purchaser would be relieved from further liability under the agreement; or the sellers could utilize 'any of the legal or equitable rights, other than . . . forfeiture' available to them, provided they notify the purchaser and the broker of this election 'in writing within 30 days from the date scheduled for settlement.' " *Id.* at 205-06.

We concluded that under the circumstances the broker had no right to receive his commission out of the deposit.[2]

The contract clause here at issue is, as we have indicated, identical in every material respect to the provision that we construed in *Casey.*[3] In light of *Casey,* we find that the otherwise ambiguous forfeiture provision in this case has in fact acquired a settled and distinct meaning.[4] Accordingly, we find that the provision permits the seller upon breach by the buyer to take only one of two courses of action — either forfeit the deposit and thereby release the buyer from further liability, or pursue any legal or equitable remedies to the exclusion of the right to forfeit the deposit.[5]

---

**2.** We noted in *Casey* that an election to pursue " 'any legal or equitable rights, other than the said forfeiture,' " was not made within the thirty-day period, and therefore the only rights available to the broker were through the seller's forfeiture of the deposit. We pointed out that before the broker could establish ownership over the deposit (as distinguished from the right of possession), the seller must, as a condition precedent, declare a forfeiture, as a breach by the buyer does not of itself operate as a forfeiture. Because the sellers did not notify the purchaser of their intent to forfeit the deposit, the Court held that there had been no forfeiture, and consequently the broker could not maintain a suit for the deposit.

**3.** *Casey* was not cited by either party in the proceedings before the circuit court. Although the buyers later relied upon this case in the Court of Special Appeals, that court mistakenly noted that *Casey* did not address the matter of the proper construction of the forfeiture provision.

**4.** It should be noted that prior to *Casey,* there was inherent ambiguity in use of the two words "other than" in the forfeiture clause. As defined in Webster's Third New International Dictionary 1598 (1976 ed., unabridged), the word "other" can mean: "b: DIFFERENT, DISTINCT — used after the noun and with *than* . . . 3: MORE, ADDITIONAL . . . often used after the noun and with *than.*"

**5.** The sellers contend that the buyers' attempt to execute a separate written release from further liability indicates that they did not construe the forfeiture clause as precluding cumulative remedies. The sellers further contend that the construction of the clause should be determined by their conduct, as revealed in their correspondence with the buyers, that they viewed the forfeiture of deposit as only a portion of their damages.

The forfeiture of the deposit under the contract provision in this case can be supported on the theory that it was in the nature of liquidated damages rather than a penalty. *See Macon v. Zeiler,* 233 Md. 160, 163-64, 195 A.2d 687 (1963); *Alois v. Waldman,* 219 Md. 369, 377, 149 A.2d 406 (1959). Liquidated damage, of course, is a specific sum of money agreed upon as the amount of damages to be recovered for breach of the agreement. *Traylor v. Grafton,* 273 Md. 649, 661, 332 A.2d 651 (1975). A provision for such damages is enforceable unless it is shown that the provision is actually designed as a penalty. *Id.* In this case there is no contention that the forfeiture clause constituted a penalty. It should furthermore be recognized that if a deposit is forfeited as liquidated damages, a claim may not then be made for actual damages. *See Macon v. Zeiler, supra,* 233 Md. at 164; *Alois v. Waldman, supra,* 219 Md. at 377. Although a deposit may be treated as a fund out of which damages may be paid, *Macon, supra,* 233 Md. at 164; *Alois, supra,* 219 Md. at 377; *Royer v. Carter,* 37 Cal. 2d 544, 233 P.2d 539, 541 (1951), the language in the instant contract provision, construed in light of *Casey,* does not permit such a construction.

We conclude that once the seller elected to declare a forfeiture of the deposit, he was thereby precluded from pursuing other legal or equitable remedies.

> *Judgment reversed; case remanded to the Court of Special Appeals with directions to remand to the Circuit Court for Baltimore County for the entry of judgments consistent with the views expressed in this opinion; costs to be paid by appellees.*

Although the practical construction which the parties have given to a contract is persuasive evidence of the parties' intent in entering into the agreement, Hughes v. Thurman, 213 Md. 169, 177, 131 A.2d 479 (1957), and notwithstanding the rule that a contract is construed against its draftsman where the meaning is doubtful, Burroughs Corp. v. Ches. Pet. & Supply, 282 Md. 406, 411-12, 384 A.2d 734 (1978), we nevertheless find that the construction placed on this clause in *Casey* is sufficient to overcome a contrary interpretation of this provision.